[No. 12161. Department One. — September 11, 1889.]

JULIA HERRLICH, RESPONDENT, v. MAGGIE McDONALD, APPELLANT.

MOTION — REVIEW ON APPEAL — BILL OF EXCEPTIONS — NOTICE OF MOTION. —A motion may be made orally, though it is better practice to have it made in writing or entered in the minutes of the court; but in every case where it is desired to review a motion on appeal, it should be made part of the record by a bill of exceptions, showing that the motion was made, and the ground upon which it was made. It is not sufficient to embody the notice of the motion in the record, for such notice is distinct from the motion itself. Error in the granting of a motion must be made affirmatively to appear in the record.

APPEAL — AUTHENTICATION OF PAPERS — BILL OF EXCEPTIONS — ORDER AFTER JUDGMENT. — Without a statutory provision authorizing the authentication of copies of papers in some other way, the only proper way that they can be brought into the record upon appeal and identified is by bill of exceptions or statement; and in case of appeal from any decision made after judgment, a bill of exceptions is the only proper mode of authentication.

DISCHARGE IN INSOLVENCY — MOTION TO SET ASIDE EXECUTION. — When a discharge in insolvency is procured by a judgment debtor after the decision and rendition of the judgment, so that it was not available as a defense in the action, the fact that it was procured before the actual record of the judgment will not preclude the assertion of the discharge by a motion to recall and set aside an execution issued on the judgment.

ID. — CERTIFICATE OF DISCHARGE — BURDEN OF PROOF. — It is sufficient for the debtor upon such motion to produce the certificate of discharge in insolvency without producing the other insolvency proceedings, since the certificate is *prima facie* evidence of the regularity of the discharge; but the debtor must also prove that the debt sought to be avoided was one affected by the discharge.

ID. — FIDUCIARY DEBT — PURCHASE OF MINING STOCK — CONVERSION BY AGENT. — When a dealer in mining stocks is intrusted with money to buy mining stock for another, and does so, and sells the stock so purchased at a profit, and refuses to deliver the stock or its dividends to the owner upon demand, the proceeds of the stock are held in trust for the owner, and the obligation to pay the same to the owner is one created while acting in a fiduciary character, as an agent of the owner, and is not affected by a discharge of the agent in insolvency.

PRINCIPAL AND AGENT — DEALER IN MINING STOCKS — FACTOR — FIDUCIARY RELATION. — A dealer in mining stocks who is especially intrusted with money with which to purchase mining stocks for another is, as to the stock so purchased, simply an agent to buy property in the name of the principal, and cannot be treated as a general factor in relation to such stock; but holds it in a fiduciary relation as trustee of the principal.

APPEAL from an order of the Superior Court of the city and county of San Francisco refusing to recall an execution.

The facts are stated in the opinion of the court.

*W. B. Tyler*, and *W. H. Sears*, for Appellant.

*Charles F. Hanlon*, for Respondent.

WORKS, J. — This is an appeal from an order refusing to recall and set aside an execution. The judgment upon

which the execution was issued has been affirmed by
this court. (*Herrlich* v. *McDonald*, *ante*, p. 460.) The
ground upon which the motion to recall the execution
was made, if there was such a motion, seems to have
been that the defendant had been discharged in insol-
vency. The record on this appeal is in an anomalous
condition. It appears that a notice was given that on a
certain day a motion would be made to recall and set
aside the execution on certain grounds stated, but no
such motion appears in the transcript, nor is it shown
in any proper way that any such motion was made.
The grounds of the motion, if one was made, do not
appear in any way. The notice was that the defendant
*would* make such a motion on certain grounds, but
whether she *did* make it or not on those or any other
grounds is left wholly to conjecture. We presume the
appellant expects us to infer that because she said she
would make the motion she did make it. The only
thing tending to show that a motion was made is a re-
cital in the order appealed from that the "cause came
on to be heard this day on defendant's motion to vacate
and set aside writ of execution issued December 31,
1886."

There is no bill of exceptions, and the certificate of
the judge as to what papers were used recites that "upon
the motion to recall execution in the above-entitled ac-
tion, the following papers were read and referred to."
Neither of these show that a motion was actually made,
but if they did, the grounds upon which it was made
nowhere appear.

This being the state of the record, we might properly
affirm the order on the ground that no error is made
apparent. The practice in this respect seems to be ex-
tremely loose. Counsel seem to confound the notice of
motion with the motion itself. The notice is not a mo-
tion, and should not be so treated. The careful practi-
tioner will either prepare and file his motion in writing,

stating the grounds thereof, or have the same entered in the minutes. This is not necessary, however. The motion may be made orally, but in every case, whether the motion is made in writing, entered on the minutes, or stated orally, the same should be preserved by a bill of exceptions and brought to this court in that way on appeal, so that we can see from the record that a motion was made, and the ground upon which it was made.

It is also a matter of serious question whether any of the papers claimed to have been used on the alleged motion are properly authenticated.

As we have said, there is no bill of exceptions. The only authentication is by the certificate of the judge of the court below, at the close of the transcript, as follows:—

"I, T. H. Rearden, judge of Department Seven of said court, hereby certify that upon the hearing of the motion to recall the execution in the above-entitled action, the following papers were read and referred to: The judgment roll in said action; adjudication of insolvency, stay of proceedings and order of publication of notice to creditors upon petition in insolvency of M. H. McDonald, filed August 4, 1882, herein; certificate of final discharge of defendant, M. H. McDonald, in insolvency, filed January 30, 1883, in the insolvency proceedings; affidavit of defendant, filed March 18, 1882; affidavit of Julia Herrlich, filed March 27, 1882; affidavit of Marguerite Beneux, filed March 27, 1882; and notice of motion to recall execution, filed January 26, 1887; the execution with its return and indorsements.

"T. H. REARDEN,
"Judge of said Court, Department Seven.
"Dated March 17, 1887."

Formerly it was expressly provided that on motion for a new trial affidavits used might be identified by indorsement by the judge or clerk at the time as having been read or referred to on the hearing. (Stats. 1861,

p. 599; Hayne on New Trial and Appeal, 790.) The present code has no such provision. It is simply pro-vided that "on appeal from a judgment rendered on appeal, or from an order, except an order granting or refusing a new trial, the appellant must furnish the court with a copy of the notice of appeal, of the judgment or order appealed from, and of papers used on the hearing in the court below." (Code Civ. Proc., sec. 951.)

We are of the opinion that without a statutory pro-vision authorizing the authentication of copies of papers in some other way, the only proper way that they can be brought into the record and identified is by bill of exceptions. There are decisions of this court, however, in which it has been rather taken for granted that a certificate of the judge is sufficient. (*Walsh* v. *Hutchings*, 60 Cal. 228; *Nash* v. *Harris*, 57 Cal. 243; *Larkin* v. *Larkin*, 76 Cal. 323.) And in one case it was held in Department that as the statute prescribed no mode in which such papers should be authenticated, "this court had power to prescribe by rule how such papers should be brought before it on appeal; and if it had power to make such a rule in advance, it *had the power to ratify the mode adopted by the court below*," and upon this propo-sition was founded the decision in that case that the certificate of the judge of the court below was sufficient. (*People* v. *Centinela Land Company*, 56 Cal. 173.) But the code does provide, in express terms, how all papers, proceedings, and exceptions, not otherwise a part of the record, may be made such, viz., by a bill of exceptions or statement. (Code Civ. Proc., secs. 646, 649–651.) In case of an appeal from any decision made after judg-ment, a bill of exceptions is the proper, and in our opin-ion the only proper, mode of authentication. (Code Civ. Proc., sec. 651.)

But the respondent has not asked us to affirm the order on the ground that the question is not properly

presented, and in view of this fact, and considering the state of uncertainty in which the question is left by the decided cases, we prefer to decide this case on its merits. We must say, however, that if this court has the power to determine that papers to be used on appeal may be authenticated in a way not provided for by statute, when a different way is provided for, which we very much doubt, it should be done by a rule adopted in advance, and made applicable to all cases, and not be left for the court to say in each case whether or not the mode adopted in that case is sufficient.

The respondent contends that the discharge in insolvency, relied upon by the appellant, could not avail her on this motion, for the reason that she had such discharge before the judgment was rendered against her, and the same was not pleaded as a defense. This position would no doubt be unanswerable if it were true that the judgment was rendered after the discharge was given. But it does not so appear. The findings of the court were made and filed November 28, 1881, and the judgment bears the same date, but it is indorsed, "*Recorded June 24, 1886,*" and the execution complained of recites the judgment as of the latter date. Now, conceding that the judgment could not have been enforced or appealed from until it was recorded, it does not follow that the defendant was at fault in not pleading her discharge. At the time of the trial and rendition of the judgment, she had not procured her discharge, and consequently could not have pleaded it, nor could she have pleaded or set up such discharge in any way, to make the same available between the rendition and recording of the judgment. Therefore, having had no opportunity to plead and prove her discharge at the trial, she cannot be held to have waived the right to assert it in the manner attempted in this motion.

It is further claimed by the respondent that the order of adjudication and certificate of discharge was not suffi-

cient, without the other proceedings in insolvency, to show that the discharge was valid. Section 53 of the insolvency act provides that the certificate shall be *prima facie* evidence of the regularity of such discharge. This being so, it was sufficient to introduce the certificate alone. But while the certificate was sufficient *prima facie* to show a valid discharge from all debts from which the appellant was dischargeable, it does not follow from this that her case was made out by such proof alone. There are certain obligations from which she could not be discharged. (Insolvency Act, sec. 52.) We think it was incumbent upon her to show, not only that she had been discharged, but that the debt sought to be avoided was one which was affected thereby. Whether this was shown by the complaint on which the judgment was rendered will necessarily be considered in passing upon the next point made by the respondent.

It is also claimed that the debt for which the judgment was recovered was one created "*while acting in a fiduciary character*," and that for that reason it was not discharged. Section 52 of the insolvency act provides: "No debt created by fraud or embezzlement of the debtor, or by his defalcations as a public officer, or while acting in a fiduciary character, shall be discharged under this act, but the debt may be proved, and the dividend thereon shall be a payment on account of said debt; and no discharge granted under this act shall release, discharge, or affect any person liable for the same debt for or with the debtor, either as partner, joint contractor, indorser, surety, or otherwise."

The question is, therefore, whether the complaint on which the judgment was recovered was for a debt contracted while acting in a fiduciary capacity. The complaint alleges, in substance, that the defendant was a dealer in mining stocks, but whether on her own account, or as a broker or factor, does not appear; that the plaintiff employed the defendant to purchase mining

stock for her, and gave her three thousand six hundred dollars to be used for such purpose; that she purchased stock worth that sum, and retained and collected the dividends thereon; that the plaintiff demanded the stock and dividends, but she refused to deliver the stock or pay the dividends.

The prayer of the complaint was for the stock and dividends, or their value. In addition to the facts alleged in the complaint, the court found that the defendant had actually sold and disposed of the stock at a profit, and for the amount for which the judgment was rendered.

The appellant contends that this does not show that the debt was created by fraud or embezzlement or while acting in a fiduciary character, but that the defendant was shown to have been acting as a factor, and that such a debt is dischargeable in insolvency.

There are authorities holding that where a party doing business as a factor had money in his hands received in the course of his business, or has used the same for his own purposes, the claim of one dealing with him for the money due him was not within the provision in the federal bankrupt law, similar to that of our insolvency act, against the discharge of a debtor from fraudulent or fiduciary debts. (*Chapman* v. *Forsyth,* 2 How. 202; *Zepenrink* v. *Card,* 11 Fed. Rep. 295; *Woolsey* v. *Cade,* 15 Nat. Bank. Reg. 238; *In re Smith,* 18 Nat. Bank. Reg. 24; *Upshur* v. *Brisese,* 37 La. Ann. 138.)

So it is held that the claim relating to debts fraudulenly created was meant to apply only to cases of "positive fraud or fraud in fact involving moral turpitude or intentional wrong, and not implied fraud or fraud in law which may exist without the imputation of bad faith or immorality." (*Neal* v. *Clark,* 95 U. S. 704; *Hennequin* v. *Clews,* 111 U. S. 676; *Strang* v. *Bradner,* 114 U. S. 555.)

There was no direct allegation of fraud in the complaint in this case, nor was it averred that the defendant

was engaged in the business of a factor or commission merchant, or that she acted as such in this instance. The reason for holding that a factor is not one acting in a fiduciary character, within the meaning of the bankrupt laws in the class of cases mentioned, is apparent. The money received by him is not the money of the party for whom he does business. It is his own money, but on an accounting he is bound to pay over to his customers the amounts due them. The claim of the customer is a simple debt, and, independent of actual fraud, there is no reason why a factor should not be discharged from his debt, as well as any other business man. The factor may buy and sell in his own name, and mingle the money of his customers in the same way. (*Slack* v. *Tucker*, 23 Wall. 321, 329.)

The question presented here is an entirely different one. The allegations of the complaint present a case in which the plaintiff intrusted money to the defendant to buy mining stock for her. When purchased, the stock was the property of the plaintiff, and the defendant held it as a trustee for her, and upon demand she was legally bound to deliver the stock and account for the dividends she had received. She was simply an agent to buy property in the name of her principal, and stood in a fiduciary relation. Her refusal to deliver the stock and the sale of it by her was a conversion of the property, and the proceeds remained in her hands in trust for the plaintiff. (*Matteson* v. *Kellogg*, 15 Ill. 548.)

It is manifest that such an obligation could not be affected by a discharge in bankruptcy. (*Clark* v. *Pinckney*, 50 Barb. 226; *Matteson* v. *Kellogg*, 15 Ill. 548; *Woolsey* v. *Cade*, 15 Nat. Bank. Reg. 243; *White* v. *Platt*, 5 Denio, 271; *Stoll* v. *King*, 8 How. Pr. 298; *Flagg* v. *Ely*, 1 Edm. 206; *Fulton* v. *Hammond*, 11 Fed. Rep. 291.)

The distinction between this case and those relating to general factors is well expressed in *Matteson* v. *Kellogg*, 15 Ill. 549. In that case it was said: "Under this act,

the supreme court of the United States, in the case of *Chapman* v. *Forsyth*, 2 How. 202, decided that money received by a factor on the sale of the goods of his principal does not create a fiduciary debt within the meaning of that act. The reason assigned for that decision is, that, according to the course and usage of the trade, the factor is permitted to carry such money into account and mingle it with his own money, whereby it ceases to be the money of the principal, and becomes the money of the factor, who becomes debtor to the principal to that amount. If there is an implied agreement between the principal and the factor that the latter may take and use the money in his business till called for, by being thus carried into general account it becomes an ordinary debt, the same as money loaned subject to call. But such was not the character of this transaction. The money was here placed in Wright's hands for a particular purpose, with no authority to use it in his general business, or appropriate it in any way different from the trust which he assumed when he received the money. It continued to be the principal's money in Wright's hands, as much as it was in Blish's hands, or even in their own; and using it any way different from his instructions and his agreement was a breach of the trust which he had assumed. He did not become debtor to his principals till he misapplied the funds. Had he bought the land intended to be purchased, or any other lands, with this money, and taken the deed to himself, a resulting trust would have arisen in favor of the principals whose money was thus invested. Had the principals consented that he might use the money in his business, and then, at a convenient season, purchase the lands with his own funds for their use, then it would have become an ordinary debt so soon as he used the money in pursuance of such consent. I understand the rule to be, where one receives the money or property of another as agent or bailee, the title to which is to remain in the principal, and which is to be paid over or delivered to

him, or to be used in a particular way, or for a specific purpose for his use, that then the money or property is received or held in a fiduciary capacity, or as trustee. In such a case, a special trust and confidence is reposed beyond that of mere credit, and it was against the violation of such confidence that Congress designed to provide by the exception quoted."

It will be found, upon an examination of the cases holding that the liability on the part of a factor is discharged by bankruptcy, that they apply to cases where the factor has moneys in his hands growing out of the general business of such factor, and not to a case like this, where money is given him with which to buy property for his principal. Beside, the cases relied upon by the appellant were decided under the earlier bankrupt law, which differed materially from the latter statute on that subject and from our insolvency act. But we do not regard this as material in this case, as it is not within the decisions relied upon, even if the language of the statutes were the same. There are numerous cases holding that under the later bankrupt law the debt of a general factor for a balance in his hands for sales made was not discharged by his bankruptcy; but as we have concluded that the appellant cannot, under the allegations of the complaint, be treated as a factor, we need not cite them. It is the law of this state, however, that such a debt is not affected by a discharge in bankruptcy. (*Treadwell v. Holloway*, 46 Cal. 547.)

The allegations of the complaint and findings of the court show that the appellant was acting in a fiduciary capacity, and that her appropriation of the stock and dividends were in bad faith, and fraudulent.

For both these reasons her discharge in insolvency did not affect her liability.

Order affirmed.

PATERSON, J., and Fox, J., concurred.

Hearing in Bank denied.