[No. 13165.   Department Two. — June 23, 1891.]

89   557
95   413

89  557
138  610

# IN THE MATTER OF JOSEPH P. DYER, AN INSOLVENT DEBTOR, RESPONDENT, *v.* RICHARD BRADLEY, AN OPPOSING CREDITOR, APPELLANT.

INSOLVENCY PROCEEDINGS — OPPOSITION TO DISCHARGE — PLEADING — STRIK-ING OUT IRRELEVANT SPECIFICATIONS. — Under section 50 of the Insol-vent Act, a creditor opposing the discharge of a debtor must state in his written specifications facts which, if denied, will raise material issues, and if admitted or established will constitute valid grounds of opposition to the discharge; and if he fails to do this, and states only irrelevant and immaterial matters, the specifications may, on motion, be stricken out or disregarded.

ID. — FRAUDULENT PREFERENCE — LIMITATION OF TIME — INVALID GROUND OF OPPOSITION. — No preference is fraudulent under sections 49 and 55 of the Insolvent Act, unless it is made within one month before the fil-ing of the petition in insolvency; and an allegation by an opposing credi-tor, in his specifications of the grounds of his opposition, that, a year and eight months before the debtor filed his petition in insolvency, he, know-ing that he was then insolvent, paid two of his creditors in full, with in-tent to prefer them to other creditors, does not constitute a valid ground of opposition to the discharge.

ID. — DEBT FRAUDULENTLY CONTRACTED IN FIDUCIARY CHARACTER — IN-VALID OPPOSITION OF CREDITOR. — Under section 52 of the Insolvent Act, a debt created by a fraud of the debtor while acting in a fiduciary character is not affected by the debtor's discharge in insolvency, and the fact that the debt was so created is not a valid ground of opposition to the discharge.

ID. — PLEADING — CONCLUSION OF LAW — FRAUD UPON CREDITORS. — An allegation that the insolvent, by making the payments complained of, "did thereby defraud his other creditors," is an allegation of a mere con-clusion of law, and in the absence of a statement of facts showing that the payments constituted a fraud upon the other creditors, or that the insolvent intended thereby to defraud his other creditors, is not a suffi-cient charge of a fraudulent preference.

APPEAL from an order of the Superior Court of Ala-meda County granting a discharge in insolvency.

The facts are stated in the opinion.

*Campbell & Wright,* for Appellant.

*Pillsbury & Blanding,* for Respondent.

BELCHER, C. — This is an appeal from an order grant-
ing the respondent, Joseph P. Dyer, a discharge from
his debts, under the Insolvent Act of 1880.

It appears from the record that Dyer filed his petition
in insolvency on the third day of August, 1888, and was
adjudged to be an insolvent debtor. Subsequently the
appellant, Richard Bradley, proved his debt against the
insolvent, amounting to $5,928.50. At the proper time
thereafter the respondent applied to the court by peti-
tion for a discharge from his debts. The appellant
objected to his discharge, and filed specifications, in
writing, of the grounds of his opposition. These specifi-
cations were, in substance, as follows: 1. That on Decem-
6, 1886, the respondent paid to the Nevada Bank of San
Francisco, one of his creditors, a large sum of money,
not less than seventy thousand dollars, with the intent
to prefer the bank as a creditor, and to pay it in full, and
did, in paying the said money to said bank, prefer the
same as a creditor, and pay it in full, and did thereby
defraud his other creditors; 2. That on the second day
of December, 1886, the respondent, knowing that he was
insolvent and unable to pay his just debts, paid to M. C.
Blake, a creditor, a large sum of money, not less than
thirty-five thousand dollars, the same being greatly in
excess of any amount due the said Blake from the re-
spondent, and that such payment was made with the
intent to prefer him as a creditor, and to pay him in
full, and the respondent, in paying this money to Blake,
did prefer him as a creditor, and pay him in excess of
the full amount due him, and did thereby defraud his
other creditors by reason of such preference; 3. That
the relationship existing between the appellant and re-
spondent was a fiduciary one, and the indebtedness of
respondent to appellant was created by reason of such
fiduciary relationship, and in this way: during the year
1866 the respondent was a stock-broker, engaged in buy-
ing, selling, and holding stocks for his patrons; the ap-

pellant, reposing special confidence and trust in the honesty and solvency of respondent, deposited with him divers mining stocks of the value of $5,928.50, to be kept and taken care of for appellant, and to be subject only to his order; these stocks the respondent afterwards sold and converted to his own use, without the knowledge, consent, or order of appellant; 4. That on the third day of December, 1886, the respondent, well knowing his insolvency, but contriving and wishing to defraud appellant, in answer to inquiries, assured appellant that he was perfectly solvent, and that the property intrusted to him by appellant as aforesaid was perfectly safe and secure, and that by leaving the same with him, the appellant could and would run no risk of losing the same; that appellant, relying on said assurances, took no steps to secure and recover his property as he otherwise could and would have done, and that the indebtedness of respondent to appellant was created by the loss of said property, and that by reason of said deceit appellant was defrauded; 5. That the debt owing by respondent to appellant is a fraudulent debt, and was fraudulently created; that is to say, prior to December 3, 1886, respondent was a stock-broker, and was intrusted by appellant with certain mining stocks of the value of $5,928.50, which he wrongfully and fraudulently converted to his own use, and by reason of such conversion became indebted to appellant for the value thereof.

Afterwards, pursuant to an order to show cause why the discharge should not be granted, the parties appeared in court, and the attorneys for respondent then orally moved the court to strike out the opposition of appellant, and for an order discharging respondent from his debts, notwithstanding the opposition, on the ground that it did not appear that the appellant was entitled to make the opposition, and that the alleged opposition did not state facts sufficient, and was not in form or substance sufficient to constitute any valid ground of opposition to

the discharge. The attorneys for appellant objected that the respondent had not filed any demurrer or answer to the opposition, and asked the court to require the respondent to file his demurrer or answer before any further proceedings should be taken. The court refused to make the order requested. The application for a discharge was then taken under advisement by the court, and was subsequently granted, and a certificate of discharge given to respondent in the form prescribed by statute. Hence this appeal.

The appellant contends that the court erred in refusing to require the respondent to demur or answer to the specifications of the grounds of his opposition, and in granting the discharge without any trial of the issues tendered thereby. On the other hand, the respondent contends that the specifications tendered no material issues, and that no demurrer or answer was therefore required.

The Insolvent Act (sec. 50) provides: " Any creditor opposing the discharge of a debtor shall file specifications, in writing, of the grounds of his opposition; and after the debtor has filed and served his answer thereto, which pleadings shall be verified, the court shall try the issue or issues raised, with or without a jury, according to the practice provided by law in civil actions."

Under this section, we think the opposing creditor must state in his specifications facts which, if denied, will raise material issues, and if admitted or established will constitute valid grounds of opposition to the discharge. If he does not do this, but states only irrelevant and immaterial matters, the specifications may, on motion, be stricken out, or disregarded as surplusage. This is a long-settled rule as to immaterial matters stated in pleadings in civil actions, and we think it equally applicable to proceedings under the Insolvent Act.

The only question, then, is, Did the facts stated by ap-

pellant in his specifications, if true, constitute a valid ground of opposition to the discharge?

It will be observed that the charges against respondent may be divided into three classes: 1. That a year and eight months before he filed his petition in insolvency, he, knowing that he was then insolvent, paid two of his creditors in full, with intent to prefer them to other creditors; 2. That the debt to appellant was created while respondent was acting in a fiduciary character; 3. That the debt to appellant was created by fraud on the part of respondent.

The provisions of the Insolvent Act bearing on the question are as follows: Section 49 provides that "no discharge shall be granted, or if granted shall be valid, . . . . if within one month before the commencement of such proceedings, he [the debtor] has procured his lands, goods, money, or chattels to be attached, or seized on execution; . . . . or if he has given any fraudulent preference contrary to the provisions of this act, or made any fraudulent payment, gift, transfer, conveyance, or assignment of any part of his property, . . . . or if he has, in contemplation of becoming insolvent, made any pledge, payment, transfer, assignment, or conveyance of any part of his property, directly or indirectly, absolutely or conditionally, for the purpose of preferring any creditor or person having a claim against him, or who is or may be under liability for him, or for the purpose of preventing the property from coming into the hands of the assignee, or of being distributed under this act in satisfaction of his debts."

Section 55 provides that "if any person, being insolvent, or in contemplation of insolvency, within one mouth before the filing of a petition by or against him, with a view to give a preference to any creditor or person having a claim against him, or who is under any liability for him, . . . . makes any payment, assignment, transfer, or conveyance of any part of his property,

. . . . the person receiving such payment . . . . having reasonable cause to believe that such person is insolvent, and that such . . . . payment . . . . is made . . . . with a view to prevent his property from coming to his assignee in insolvency, or to prevent the same from being distributed ratably among his creditors, . . . . such transfer, payment, conveyance, pledge, or assignment is void, and the assignee may recover the property, or the value thereof, as assets of such insolvent debtor."

And section 52 declares that "no debt created by fraud or embezzlement of the debtor, . . . . or while acting in a fiduciary character, shall be discharged under this act, but the debt may be proved, and the dividend thereon shall be a payment on account of said debt."

1. Unless made so by the above quoted provisions of the statute, the preferences complained of were neither fraudulent nor unlawful. (*Dana* v. *Stanford*, 10 Cal. 269; *Randall* v. *Buffington*, 10 Cal. 491; *Wheaton* v. *Neville*, 19 Cal. 46; *Dean* v. *Grimes*, 72 Cal. 447.) It is true, it is charged that the payment to Blake was in excess of the amount due him, but that we regard as of no consequence; for, so far as appears, the excess may have been paid by mistake, and may have been returned or properly accounted for before the proceedings in insolvency were commenced. It is also charged that by making the payments respondent "did thereby defraud his other creditors"; but that was a mere conclusion of law. No facts were stated from which it can be said that the payments constituted a fraud upon the other creditors, or that the respondent intended thereby to defraud his other creditors.

It will be noticed that section 49 speaks of only two kinds of preferences which will prevent or make invalid a discharge; one a "fraudulent preference, contrary to the provisions of this act," and the other a preference made "in contemplation of becoming insolvent"; and section 55 only declares void a preference made "within

one month before the filing of a petition " in insolvency.

These sections are part of the same act, and must be read together. When so read, the question is, Within what time must the inhibited preferences be made, in order to impose the penalty declared by section 49? It seems to us the answer is found in sections 49 and 55, and that the time there named is controlling. Certainly it could not have been intended that the time might extend back indefinitely, possibly for years.

In Bump's Practice in Bankruptcy, page 708, it is said: " No preference can be fraudulent under the act, unless it is made within four months [the time named in similar provisions of the bankrupt act] before the filing of the petition in bankruptcy " (citing authorities).

2. The charges that the debt to appellant was created while the relations of the parties were of a fiduciary character, and by the fraud and wrongful conversion of the respondent, are not grounds for opposing a discharge. Under section 52, a debt so created is not affected by the discharge, and such a creditor has therefore nothing to complain of. (*Herrlich* v. *McDonald*, 80 Cal. 472; *In re McEachran*, 82 Cal. 224.)

We see no error in the rulings of the court below, and therefore advise that the order appealed from be affirmed.

FITZGERALD, C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the order appealed from is affirmed.