[Civ. No. 2367.    Third Appellate District.—October 21, 1921.]

## EMMA PARKER et al., Appellants, v. ETTA HARDISTY et al., Respondents.

[1] DEED OF GIFT—REFORMATION—JUDGMENT—ACTION TO SET ASIDE—DEFENSE—FRAUD—PROOF.—In order for the heirs at law of the grantor in a deed of gift to prevail in an action brought by them to vacate and annul a judgment obtained in a prior action reforming the description in such deed, they must show not only that such prior judgment was procured by fraud, but also that they had a substantial defense to the action in which that judgment was rendered.

[2] ID.—DEFECTIVE DESCRIPTION—SUBSEQUENT BONA FIDE PURCHASER FOR VALUE—REFORMATION—SUPERIORITY OF EQUITIES.—Equity will not refuse to reform the description contained in a deed from a husband to his wife because it was a mere voluntary transfer without any consideration, where subsequent to the execution of the conveyance, but prior to the commencement of the action for the reformation thereof, a portion of the land intended to have been conveyed passed by mesne conveyances to plaintiff, who paid full value therefor, and his predecessors in interest, including the grantee of the husband, had been for over fourteen years in the open, notorious, actual, and continuous possession of the same, and paid all the taxes thereon, whereas the defendants' only claim of title was based upon the fact that they were heirs at law of the grantor.

[3] ID. — ACTION FOR REFORMATION — PARTIES — SUBJECT MATTER — RES ADJUDICATA.—The action for the reformation of the deed of gift from the husband to the wife having been brought against a daughter of the grantor, as the administrator of his estate, by one asserting title to a particular portion of the land claimed to have been omitted from the description in the deed by mistake, the judgment in that action did not constitute an adjudication of the claim of said daughter personally to a different portion of the land under a conveyance from her mother.

[4] ADVERSE POSSESSION—STATUTE OF LIMITATIONS—CLAIMS OF HEIRS—TITLE UNDER INDEPENDENT SOURCE.—The fact that the plaintiffs claimed title to the property as heirs of their father would not stop the statute of limitations from running against them and prevent others from obtaining title to the property by adverse possession, where the latter asserted title from an independent source in opposition to the estate of the father, and not as heirs, or successors of heirs, of the father.

2.   Reformation of instrument based on no consideration, note, 10 Ann. Cas. 523.

APPEAL from a judgment of the Superior Court of Calaveras County. Fred V. Wood, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

J. P. Snyder and A. H. Carpenter for Appellants.

R. L. Beardslee and Nutter & Hancock for Respondents.

BURNETT, J.—The opinion of the trial judge, which is set out in respondents' brief, seems to us to be a clear and satisfactory exposition of the facts and of the legal principles involved in the case, and we hereby adopt it, as follows:

"This is an action to vacate a judgment of this Court heretofore rendered by Judge McSorley and entered on January 24, 1910. The facts upon which plaintiffs seek relief are in substance as follows:

"On March 29, 1895, one Robert Reed Jenkins was the owner of 1350 acres of agricultural land in Calaveras County, one lot in Camp Seco, and four lots in the city of Stockton. Upon that day he executed a gift deed whereby he apparently attempted to convey all of this property to his wife, Julia. The deed refers to the land conveyed as 'containing 1350 acres.' Jenkins was the owner of the south half ($\frac{1}{2}$), the fractional northwest quarter ($\frac{1}{4}$) and the fractional southwest quarter ($\frac{1}{4}$) of the northeast quarter of Section 16, but in the deed to his wife the word 'of' was interpolated after the words 'the south half ($\frac{1}{2}$),' which had the effect of eliminating from the description the south half, and the north one-half of the north-west quarter of the section. Of the property thus omitted from the description in the deed, the defendant Etta Hardisty claims to be the owner of about 235 acres by virtue of a conveyance from her mother, Julia A. Jenkins, bearing date Jan. 18, 1896; and as to the remaining 125 acres of the omitted property, it appears that on said Jan. 18, 1896, for a valuable consideration the said Julia A. Jenkins executed a deed therefor to Hiram Tyrer, who entered into possession under said deed and thereafter, on June 5, 1905, executed a deed of the property to one Frank Sanborn.

The latter, for a valuable consideration, on Sept. 15, 1909, executed a conveyance of the property to W. S. Dennis, one of the defendants in this action. The following month the attorneys for Dennis discovered that the description in the deed from Jenkins to his wife did not include the property that had been purchased by Dennis, which seems to have been the first discovery made by any one that the word 'of' had been interpolated in the deed.

"At the request of Dennis, Mrs. Etta Hardisty procured Letters of Administration upon the estate of her father, Robert Reed Jenkins, to be issued to her, and on Jan. 10, 1910, Dennis commenced an action in this Court against Mrs. Hardisty, as such administratrix to reform the gift deed from Robert Reed Jenkins to his wife Julia A. Jenkins, upon the ground of the mutual mistake of Jenkins, his wife, and the scrivener who drew the deed, said mistake being the insertion of the word 'of' heretofore referred to. By said action Dennis also attempted to obtain a decree quieting title upon the ground of his predecessor's adverse possession for more than five years. Mrs. Hardisty as administratrix filed an answer consenting to a judgment in favor of Dennis in said action. All of the expenses of Mrs. Hardisty and her attorney in procuring letters and appearing in said action were paid by Sanborn, the grantor of Dennis. Judge McSorley took evidence in said action, and by his decree not only adjudged the reformation of said deed by striking out the word 'of' but as well found and decreed that Dennis and his predecessors had been in the actual, open and continuous occupation of the land, and paid all taxes levied and assessed thereon ever since the execution of the deed to Julia A. Jenkins.

"The defendant, Etta Hardisty, and the three plaintiffs in this action are the surviving children of Robert Reed Jenkins and his heirs at law, the wife, Julia A. Jenkins, having died Feb. 5, 1907. For nearly fifteen years it was assumed by all of these persons that by the deed of conveyance from Robert Reed Jenkins the whole of his property had been vested in his wife Julia A., and it was not until the rendition of the judgment by Judge McSorley that the plaintiffs discovered the error in the description, whereupon they commenced this action to vacate and annul that judgment.

"While it is claimed by the Plaintiffs that the judgment heretofore rendered was made in pursuance of a conspiracy to cheat and defraud plaintiffs, and while the said acts complained of may be such as to constitute legal and actionable fraud, yet it is but fair to the defendants to say that there is not a particle of evidence to indicate that they were intentionally endeavoring at any time to wrong or defraud any person, but on the contrary they were acting from honest motives in an attempt to correct the paper title of the property of the defendant Dennis.

"Consideration will be first had of the plaintiffs' asserted cause of action against the defendant Dennis.

[1] "The rule is well established that in order for the plaintiffs to prevail in an action of this character, they must show not only that the former judgment was procured by fraud, but also that they had a substantial defense to the action in which the judgment was rendered, for equity will not annul a judgment if it is a correct and just determination of the rights of the parties thereto. See *Reed* v. *Bank of Ukiah,* 148 Cal. 97 [82 Pac. 845]; *Parsons* v. *Weis,* 144 Cal. 417 [77 Pac. 1007]; *People* v. *Perris Irrigation Dist.,* 142 Cal. 606 [76 Pac. 381]; 23 Cyc. 1039 and 1040.

"The facts in this case in reference to the error in the deed are quite similar to those appearing in *Hart* v. *Walton,* 9 Cal. App. 504 [99 Pac. 719]. There the Court adjudged a reformation of a deed, because through the carelessness of the scrivener in writing the word 'of' instead of 'and' the grantee received 115 acres of land less than she bargained for. In that case, however, the grantee had paid a valuable consideration for the conveyance. [2] It is here urged that as the conveyance from Jenkins to his wife was a mere voluntary transfer without any consideration, the former judgment of this Court in reforming the deed was erroneous, citing *Enos* v. *Stewart,* 138 Cal. 112 [70 Pac. 1005]. That was a suit against the husband as administrator of his wife's estate, brought by her mother to correct a description in a deed of gift executed to the mother by the daughter prior to her death. It was there said: 'It is a universal principle of courts of equity that in all cases where relief is asked by aiding and correcting mistakes in the execution of instruments and powers, the party seek-

ing such relief must stand upon some equity superior to that of the party against whom he asks it. If the equities are equal, the law must prevail, and the Court will remain silent and passive. The equities of respondent are, at least, equal to those of the appellant. It is the dictate of equity and natural justice that the property of a wife dying without issue should go in part to her surviving husband. . . . By refusing to correct the deed no fraud nor injustice is done to appellant. She has lost nothing because she paid no consideration for the deed.'

"The statement often made that 'Courts of equity will not aid voluntary conveyances,' cannot be accepted as an inflexible rule, for like most others it is subject to exceptions. Thus in *Dawson* v. *Dawson,* 16 N. C. 101 [18 Am. Dec. 573], cited in *Enos* v. *Stewart, supra,* we find the court saying, 'Where, however, the conveyance is complete and the property passes, or rights are vested by it, that property or those rights are guarded and protected, notwithstanding there was no consideration for passing or raising them.' So too, in *Cummings* v. *Freer,* 26 Mich. 128, which was an action for the reformation of a deed of gift, brought against the heirs of Freer by a mortgagee who had loaned money to the son of Freer after he had gone into possession under the deed and made improvements upon the property, it is said by the Court 'That if before its execution he (the father) may have been under no legal obligation to execute it, and a mere agreement to execute such deed as a gratuity though in consideration of natural love and affection to a son, where the grantee had not gone into possession, or done, given up or expended anything on the faith of it, and no equities of other parties had intervened, would not perhaps be enforced by a decree for a conveyance.'

"The case presented before Judge McSorley was radically different from that of *Enos* v. *Stewart* upon which plaintiffs rely, and there can be little question but that Dennis stood upon an equity superior to that of the heirs of Robert Reed Jenkins who are the plaintiffs in this action. Dennis paid full value for the land, and his predecessors in interest, including Julia Jenkins, had been, for over fourteen years, in the open, notorious actual and continuous possession of the same, and paid all the taxes thereon. Plaintiffs' claim

to the property is not founded upon any consideration, and was never asserted during the fourteen years mentioned.

"Consideration now will be had of this action as it affects the 235 acre tract claimed by Mrs. Hardisty.

"The first question that arises is as to whether, even assuming the legality in every respect of the judgment rendered by Judge McSorley, can it be urged by Mrs. Hardisty in bar of the claim now made by these plaintiffs against her?

"In 23 Cyc. at page 1237, it is said, 'To constitute a judgment an estoppel, there must be an identity of parties as well as the subject matter; that is, it is necessary that the parties as between whom the judgment is claimed to be an estoppel must have been parties to the action in which it was rendered, in the same capacities and in the same antagonistic relation, or else they must be in privity with the parties in such former action.' However, in *City of El Reno* v. *Cleveland-Trinidad Paving Co.*, 25 Okl. 648 [27 L. R. A. (N. S.) 650, 107 Pac. 163], in the footnote, will be found a line of authorities holding that a judgment is *res judicata* between codefendants as to matters which were or even might have been adjudicated in a former suit.

[3] "It may be assumed, that if the judgment rendered before Judge McSorley was regular and unimpeachable, then these plaintiffs cannot now in an action against Mrs. Hardisty, question the fact, that there was an error in the deed caused by mutual mistake as alleged, but as the 235 acre tract of land was not involved in the former action, nor any person claiming it under the conveyance to Julia A. Jenkins made a party thereto, no opportunity was there afforded to these plaintiffs represented by an administratrix to obtain a judicial determination as to whether Mrs. Hardisty was entitled to a reformation of the deed to perfect her title to the 235 acres. Indeed the defendants in the former action may have not denied the error in the deed as alleged, but they did not thereby confess that Mrs. Hardisty was entitled to a reformation to clear her title, nor could that question have been involved without placing Mrs. Hardisty in the anomalous position of individually suing herself as administratrix. Furthermore, upon general equitable principles a party ought not to be permitted to urge in bar of an action, a judgment that she has con-

fessed to as an administratrix and defendant in a former action. Believing as I do that the decree of Judge McSorley was not an adjudication of any claims to the 235 acre tract, it follows that under the pleading and evidence before the Court Mrs. Hardisty has shown no legal claim to property, for as she cannot rely upon the former decree, it was incumbent upon her by proper pleading and legal evidence to show that there was a mutual mistake in the execution of the deed and that she had a superior equity to that of plaintiffs to the property, or that she had acquired ownership by five years' adverse possession, but in both these particulars she has failed. Certain statements of counsel made during the trial, together with certain evidence, lead to the inference that Mrs. Hardisty may be able to produce evidence that she has acquired title by adverse possession, and that the deed under which she claims was acquired by virtue of a division and settlement of the estate of Julia A. Jenkins among her children. Under such circumstances justice and equity seem to dictate that the rights of Mrs. Hardisty shall not be finally cast without an opportunity to amend her pleadings and produce further evidence.

[4] "In this connection it may not be amiss to notice the claim made by the plaintiffs, that the statute of limitations cannot run against them as heirs of their father, Robert Reed Jenkins. In support of this contention they rely upon the case of *Blair* v. *Hazzard*, 158 Cal. 722 [112 Pac. 298]. There is nothing in that case that would militate against the acquirement of title by adverse possession by either Dennis or Mrs. Hardisty. All that was involved there is stated at the top of page 725 and is as follows: 'The question is, can a devisee of an estate or a grantee of a devisee entering into possession of realty by virtue of title actually or colorably derived from the estate *and asserting title from no other independent source* acquire, under the circumstances, a title against the estate by adverse possession so as to relieve the property from the statutory requirement that it shall be subject to the demands of administration?' The question was answered in the negative because real property whether in possession of administrator, the heirs or devisees, until the close of administration, is always subject to the condition that it may be sold

to pay debts and expenses of administration, and because everything that an heir or devisee in possession may do by way of ownership or exclusive control he has a perfect right to do so far as the estate is concerned.

"It is obvious here that neither Dennis, Mrs. Hardisty or their predecessors, ever asserted any title as heirs, devisees or grantees of any heirs or devisees under the estate of Robert Reed Jenkins, but that since the execution of the deed by Jenkins they or their predecessors have asserted their claim of title in opposition to that of Jenkins or his estate.

"The prayer for the annulment of the decree made by Judge McSorley will be denied, and within twenty days after notice hereof, the defendant Mrs. Hardisty is allowed to amend her answer and plead title by adverse possession and any equitable right she may have."

It appears that, after said opinion was rendered, the defendant, Mrs. Hardisty, filed an amended answer, and the action as to her is still pending in the superior court. For the reasons stated in said opinion it was proper to award judgment in favor of defendant Dennis and to continue the cause for further hearing as to defendant Hardisty. (Sec. 578, Code Civ. Proc.) As stated, the action related to two different tracts of land claimed separately by the defendants, but since they were both made parties by the plaintiffs, the latter cannot complain that the court permitted said amendment in order that the conflicting interests of all the parties might be determined in one action.

Several specific objections to the judgment are urged by appellants, but they are substantially covered by the opinion of the trial judge, and it seems hardly necessary to make any further suggestions.

To conclude, we are entirely satisfied that the judgment is supportable upon the two grounds mentioned by the trial court: First, that the matter was *res adjudicata*, and, second, that respondent Dennis acquired a prescriptive title. We may add that, in our opinion, it would be a just inference from the evidence received that it was the intention of the grantor in said deed to convey the entire 1,350 acres, including the land in controversy. As to this last consideration we may state that at the oral argument herein said deed was exhibited and its appearance would indicate that

the word "of" was interpolated or inadvertently used without any intention on the part of the grantor to qualify the extent of the property conveyed. The deed itself in connection with the practical construction placed upon it by the parties in interest and their acquiescence therein for so many years leaves scarcely any doubt that no mistake was made in the judicial determination of the intention of the grantor.

We find no merit in the appeal and the judgment is affirmed.

Prewett, J., *pro tem.*, and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 19, 1921.

All the Justices concurred.

Lawlor, J., was absent, and Richards, J., *pro tem.*, was acting.