[Civ. No. 13659. Second Dist., Div. One. Aug. 3, 1942.]

ABE ABROMS, Appellant, v. NEW YORK LIFE INSUR-
ANCE COMPANY (a Corporation), Respondent.

A. Joseph Shapiro for Appellant.

Meserve, Mumper & Hughes and Leo E. Anderson for Respondent.

YORK, P. J.—This is an appeal from two judgments dismissing an action for reformation of an insurance policy after a demurrer had been sustained to appellant's complaint without leave to amend.

A single premium policy was purchased from respondent by appellant and his wife, Rose Abroms, on June 20, 1932, providing for the payment to Rose of a life annuity of $79.10 per month "commencing on the anniversary of this Policy upon which the Annuitant's age at nearest birthday is 60 years; but, at any time prior to the commencement of such Annuity payments, the Annuitant may, provided the Policy is then in force, elect in writing to receive in lieu thereof either:

"(1) A Life Annuity, as shown in Schedule I hereof, or

"(2) A Refund Annuity as shown in Schedule II hereof.

"The Company further agrees to pay to Abraham Abroms, husband of the Annuitant, Beneficiary, in the event of the receipt of due proof of the death of the Annuitant, a Death Benefit as shown in Schedule III hereof, if such death shall occur prior to the due date of the first Annuity payment hereunder; or, if a Refund Annuity has been elected and such death shall occur on or after the due date of the first Annuity payment, the Company agrees to pay to said Beneficiary the Annuity payments, if any, becoming due after the death of Annuitant, as set forth in the provision hereof entitled 'Annuity Payments.'

"The Company, upon surrender of this Policy on the anniversary elected for commencement of Annuity payments hereunder, will issue a Certificate in lieu thereof setting forth the rights and benefits as stated herein.

"This contract is made in consideration of the application therefor and of the payment in advance of the single premium of $10,000.00 representing Ten Premium-Units of $1,000 each . . . This Policy takes effect as of the First day of July Nineteen Hundred and Thirty-two. . . ."

On July 1, 1939, Annuity Certificate No. 82 810 was issued by the Company, reading in part as follows:

"Retirement Annuity Policy No. 82 810, having been is-

sued by the New York Life Insurance Company on the life of Rose Abroms, the Annuitant, and said Policy having been surrendered to said Company,

"And Dividends on Deposit, in the amount of Two Hundred Thirty-one Dollars and Thirty-six Cents ($231.36) having been applied in accordance with the written request of said Annuitant and the provisions of said Policy to increase the amount of the Annuity payments to the amount hereinafter set forth,

"And this Certificate having been issued in exchange for and in full settlement of said Policy,

"Said Company, in accordance with the request of said Annuitant and the provisions of said Policy, shall pay to said Annuitant, if living, a Life Annuity of Eighty Dollars and Sixty-two Cents ($80.62) payable monthly at the Home Office of said Company in the City and State of New York, as follows:

"The First Annuity payment of Eighty Dollars and Sixty-two Cents shall be made as of the First day of July, in the year Nineteen Hundred and Thirty-nine, and a like amount shall be paid monthly thereafter during the lifetime of said Annuitant. Said Annuity payments shall terminate with the last monthly payment due prior to the death of said Annuitant."

It is alleged in the complaint herein that on July 1, 1939 (the anniversary of the policy on which the age of annuitant Rose Abroms at her nearest birthday was 60 years) said annuitant and her husband, Abraham Abroms, the appellant herein, "went to the office of defendant in the City of Los Angeles, County of Los Angeles, State of California, for the purpose of surrendering the aforementioned policy and receiving in lieu thereof a Certificate as described in said policy and which would provide for a *refund annuity* as shown in Schedule II of said policy whereunder the annuity payments would be payable to Rose Abroms as annuitant until her death, and upon her death there would be payable to the plaintiff as beneficiary the annuity payments becoming due after the death of Rose Abroms as set forth in the provision of said policy entitled 'Annuity Payments'; that the plaintiff and his said wife then and there informed the defendant and its agents and servants that they were desirous of surrendering the aforementioned policy for a *Certificate providing for such refund annuity;*

that the defendant then and there issued to the plaintiff and his said wife a Certificate, copy of which is attached hereto, marked Exhibit 'B,' and by this reference made a part hereof, in lieu of the aforementioned policy and the plaintiff and his said wife then and there surrendered the aforementioned policy to the defendant; that the defendant and its servants and agents at the time of the issuance of said Certificate to the plaintiff and his said wife *knew and were well aware of the fact* that the plaintiff and his said wife had ordered a Certificate providing for a refund annuity as provided in said policy; that the defendant and its agents and servants nevertheless, at said time, falsely and fraudulently represented to the plaintiff and his said wife that said Certificate being so issued to the plaintiff and his said wife did in truth and in fact provide for a refund annuity as provided for in said policy wherein Rose Abroms would be the annuitant and the plaintiff the beneficiary; that the plaintiff and his said wife relied upon said representations and accepted said Certificate in full reliance upon said representations, and surrendered the aforementioned policy in full reliance upon said representations; that neither the plaintiff nor his said wife read or examined said Certificate either at the time of its issuance or at any time prior to the death of Rose Abroms because of their reliance upon the representations so made by the defendant and its agents and servants as aforesaid; that the defendant and its agents and servants induced the plaintiff and his said wife to accept said Certificate and to retain the same until after the death of Rose Abroms by means of their false and fraudulent representations aforesaid; that the Certificate issued to plaintiff and his said wife provided for a life annuity as provided for in said policy rather than the refund annuity ordered by plaintiff and his said wife; that the plaintiff and his said wife would not have ordered or accepted a life annuity Certificate and were at the time of the issuance of said Certificate and at all times thereafter until after the death of Rose Abroms, ignorant of the fact that the Certificate which was issued to them provided for a life annuity rather than a refund annuity.'' (Italics added.)

On May 16, 1941, the annuitant Rose Abroms died and ''shortly after the death of said Rose Abroms, the defendant notified and informed the plaintiff that the Certificate which had been issued to them was in truth and in fact a life annuity Certificate rather than a refund annuity Certificate and

then and there informed the plaintiff that the defendant would make no further payments under said Certificate or under the aforementioned policy; that the plaintiff first discovered that said Certificate so issued to plaintiff and his said wife as aforesaid provided for a life annuity rather than a refund annuity after the death of Rose Abroms when plaintiff consulted an attorney.''

Demand for reformation of the certificate by appellant and refusal by the respondent to either reform, or pay appellant any sum or sums of money are also alleged.

To this complaint respondent corporation interposed a general and special demurrer in support of which was submitted a memorandum of points and authorities to the effect (a) No one can maintain an action to reform a deed or other contract unless he has some title or interest therein; (b) Where the policy reserves to the insured the right to change the beneficiary, the interest of the beneficiary prior to the death of insured is a mere expectancy subject to revocation.

Said demurrer was argued and submitted on December 5, 1941, and on December 15, 1941, was sustained by the court without leave to amend; whereupon appellant moved the court for leave to file his first amended complaint, the original of which was attached to the notice of motion. Said motion was heard and denied by the court on December 31 and on January 5 and January 6, 1942, judgments dismissing said action were entered.

The first amended complaint in addition to the facts alleged in the original complaint averred that Rose and Abe Abroms were married in the year 1905 and continuously from that date until the death of Rose on May 16, 1941, said parties were husband and wife and lived together as such; that on July 7, 1941, appellant was appointed administrator of the estate of Rose Abroms, deceased, and that ''Abe Abroms is suing herein both in his individual capacity in his own right, and as the duly appointed, qualified and acting administrator of the estate of Rose Abroms . . . deceased. . . .

''That the aforementioned policy number 82810 was at the time of its surrender and at the time of the issuance by the defendant of the aforementioned Certificate, the community property of the plaintiff, Abe Abroms, and his wife, Rose Abroms, and the plaintiff, Abe Abroms, had a community interest therein; that the plaintiff . . . at no time consented or agreed to the issuance by the defendant of the Certificate

issued by defendant as above alleged . . . other than a Certificate pursuant to the terms of the aforementioned policy and which would provide for a refund annuity wherein Rose Abroms would be the annuitant commencing at her age sixty (60) and Abe Abroms, Individually and in his own right, the beneficiary; that the plaintiff . . . at no time consented to the surrender of the aforementioned policy except upon the condition that there be issued by the defendant in lieu thereof a Certificate providing for such refund annuity.''

The questions for determination by this court appear to be: (1) Has appellant such an interest in the annuity certificate as to entitle him to maintain the present action? (2) Does the complaint sufficiently state a cause of action for reformation?

The gist of the instant action is the fraud of respondent corporation in issuing the wrong type of certificate which erroneously failed to name appellant, thus eliminating therefrom a statement of the benefits conferred upon him under the original policy in which he was the named beneficiary. Attention is here called to the statement in the original policy: "The Company, upon surrender of this Policy on the anniversary elected for commencement of Annuity payments hereunder, *will issue a Certificate in lieu thereof setting forth the rights and benefits as stated herein.''* (Italics added.) Had respondent conformed to said provision and the alleged request of appellant and his wife, and had issued the refund annuity certificate, as requested, appellant would then have had a vested interest in the proceeds of the policy and unquestionably would have been the real party in interest in an action to recover the same.

In *Cantlay* v. *Olds & Stoller Inter-Exchange,* 119 Cal. App. 605 [7 P. (2d) 395], parties who were not designated as the named assureds in an automobile liability policy, but who alleged they were intended to have been insured under the policy, brought an action to reform it so as to show them as being insured and for enforcement of the policy as reformed. In affirming the judgment in favor of plaintiffs, the court said (p. 617): "In the instant case, although the policy of insurance is between the Eastman Company as the insured and the Insurance Company as the insurer, the allegations of the complaint set forth a beneficial interest therein, in favor of the plaintiffs and they are therefore entitled to maintain this action.''

In view of the terms of the original policy and the allegations of the complaint, it is not reasonable to assume that appellant and the annuitant, for the sole purpose of receiving $8.90 per month additionally, would elect to take a life annuity rather than a refund annuity certificate when such election would result in cutting off the right of appellant as beneficiary to receive the benefits which a refund annuity certificate would confer upon him at the death of the annuitant. According to the provision entitled ''Annuity Payments'' and the provisions of Schedule III shown in the original policy, the amount of the death benefit at the time of annuitant's death amounted to approximately $12,890. Respondent apparently paid annuitant the sum of $80.62 for twenty-three months, or a total of $1,854.26 which deducted from said death benefit left a balance of $11,035.74 remaining in the hands of respondent upon the death of the annuitant. If respondent's agents issued the Annuity Certificate here in question without an explanation to appellant and his wife of its ultimate effect, that act in itself would bring the parties within the provisions of section 3399 of the Civil Code.

The equitable action for reformation is preserved by sections 3399 to 3402, inclusive, of the Civil Code:

Section 3399, *supra*: ''When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised, on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.''

Section 3400, *supra*: ''For the purpose of revising a contract, it must be presumed that all parties thereto intended to make an equitable and conscientious agreement.''

Section 3401, *supra*: ''In revising a written instrument, the court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences, and is not confined to the inquiry what the language of the instrument was intended to be.''

Section 3402, *supra*: ''A contract may be first revised and then specifically enforced.''

From what has been said, it is obvious that appellant is a ''party aggrieved'' under section 3399, *supra*, especially where the demanded reformation is for the purpose of show-

ing his beneficial interest in the Annuity Certificate according to the terms of the original policy.

Respondent urges that appellant has not alleged facts excusing the alleged failure of himself and his wife to read the Annuity Certificate. Upon this subject, the following excerpt is quoted from the opinion in the case of *California Trust Co.* v. *Cohn*, 214 Cal. 619, 627 [7 P. (2d) 297] : "We are inclined to the view, therefore, that where the failure to familiarize one's self with the contents of a written contract prior to its execution is traceable solely to carelessness or negligence, reformation as a rule should be denied; but that where such failure, and perhaps negligence, is induced, as alleged and admitted by the demurrer in this case, by the false representations and fraud of the other party to the contract that its provisions are different from those set out, the courts, even in the absence of a fiduciary or confidential relationship between the parties, should reform and in most cases have reformed, the instrument so as to cause it to speak the true agreement of the parties." (Citing authorities.) (See, also, *S. E. Slade Lbr. Co.* v. *National Surety Co.*, 128 Cal. App. 419, 425 [17 P. (2d) 775].)

An action to reform a contract is in equity, and in order to state a case therein, it is incumbent upon the pleader to show by direct averment that "by reason of fraud practiced by one of the parties, or of the mutual mistake of the parties or of a mistake of one of them, which the other at the time knew or suspected, there were omitted from the instrument certain material terms and conditions. In other words, that the language of the writing failed, for some reason, to express the intention of the parties." (*Pascoe* v. *Morrison*, 219 Cal. 54, 56 [25 P. (2d) 9].)

In *Johnson* v. *Sun Realty Co.*, 138 Cal. App. 296, 301 [32 P. (2d) 393], wherein a demurrer to the complaint was sustained without leave to amend, it was held: "The complaint [in an action for reformation] is sufficient if it shows, by direct averment, that by reason of fraud practiced by one of the parties, the executed agreement is not the actual agreement. (*Pascoe* v. *Morrison*, 219 Cal. 54 [25 P. (2d) 9].) This it does, for it is alleged that respondent falsely represented that the executed agreement was the one agreed upon, that appellant relied upon such misrepresentation and was induced thereby to sign. (*Cross* v. *Bouck*, 175 Cal. 253 [165 Pac. 702].) "

In the late case of *Genuser* v. *Ocean Acc. etc. Corp.*, 42 Cal. App. (2d) 673 [109 P. (2d) 753], a complaint for reformation of an insurance policy was held sufficient against demurrer where it alleged (a) an intention and agreement of the plaintiff and defendant that an insurance policy cover plaintiff's automobile of a certain year and with a designated serial number, and (b) the issuance, through the mistake of the plaintiff known to the defendant, of a policy covering a car of a different year and with a different number which was not owned by plaintiff and in which he had no insurable interest.

█ Since the effect of a demurrer is to admit all of the allegations of the complaint which are well pleaded, it must be assumed on appeal from the judgment that all the facts are as alleged. (21 Cal. Jur. 96; *Penziner* v. *West American Finance Co.*, 133 Cal. App. 578 [24 P. (2d) 501].)

A consideration of the allegations of the complaint having the above rule in mind has persuaded this court that the complaint herein states a cause of action for reformation; that respondent's demurrer thereto should have been overruled, and that appellant should have been permitted to file his first amended complaint.

For the reasons stated, the judgments of dismissal are reversed, with directions to the trial court to overrule the demurrer and to permit appellant to file his first amended complaint, if he still desires to do so.

Doran, J., and White, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 1, 1942. Shenk, J., and Edmonds, J., did not participate therein.