[Civ. No. 20161.   First Dist., Div. One.   May 23, 1962.]

ELIZABETH WATSON, Plaintiff, Cross-defendant in Intervention and Appellant, v. ELMER COLLINS et al., Interveners, Cross-complainants in Intervention and Respondents.

Allan Lame for Plaintiff, Cross-defendant in Intervention and Appellant.

Bruce B. Bruchler for Interveners, Cross-complainants in Intervention and Respondents.

TOBRINER, J.—In this action to foreclose a deed of trust we must deal with respondents' procedural right to intervene in the action and respondents' substantive right to defend it upon the ground that their payments conformed to the terms of the obligation secured by the deed. We have concluded that appellant cannot successfully attack the intervention at the appellate level when she failed to object to the motion to intervene in the trial court. As to the substantive issue, we believe that respondents may raise the defense that their promissory note did not conform to the deed and failed to express the true nature of the obligation. Respondents' transfer of their interest in the property and subsequent reacquisition of it did not strip them of their right to disclose the actual obligation.

On January 19, 1954, appellant and her husband, who is now deceased, entered into an agreement with Elmer and Stella Collins, interveners and respondents (hereinafter called respondents), whereby the respondents agreed to purchase certain real and personal property owned by appellant and her husband for the total amount of $19,000. The agreement provided for a down payment of $500 and $6,000 upon delivery of the deed; the "[b]alance of $12,500.00 to be paid at $1,000.00 per year or more, *including 6% interest.*" (Emphasis added.) The terms of the promissory note for $12,500 dated January 28, 1954, which was secured by a deed of trust and a chattel mortgage, differed from the agreement, in that it stipulated "that the interest is to be paid separately and in addition to the $1,000.00 per annum." The note provided for payment of interest "at the rate of six per cent per annum, payable monthly" and payment of the principal "in annual

Installments of One Thousand Dollars ($1,000.00) or more each, on the 28th day of each and every January, beginning on the 28th day of January, 1955. . . .''

Pursuant to the agreement respondents paid $1,000 per annum, including interest. In September 1957, respondents transferred their interest in the property to Guy T. and Viola Bruno (hereinafter called the Brunos), who continued to make payments in the same manner. Appellant accepted without objection these amounts, giving receipts for such payments and recording them on the back of the original note. The payments amounted to $1,000 for each year from 1954 through 1957.

Appellant first registered her discontent with the payments on March 20, 1958; her attorney sent the respondents a letter, with a copy to the Brunos, declaring the respondents ''delinquent upon your note in the sum of $2,975.00.'' On May 26, 1958, appellant brought this action against the Brunos and four fictitious defendants to foreclose the deed of trust as a mortgage and for $11,455, the unpaid balance of the note, with accrued interest, upon the theory that, since the payments were in default, an acceleration clause became effective and the entire amount of the loan fell due. Appellant sought an adjudication that such sums become a lien on the property and that a sale be ordered.

''Subsequent to the filing of this suit,'' the court found ''the Brunos transferred their interest in said real property back to the intervenors'' (the respondents). On October 2, 1958, appellant accepted from the respondents, who had not been included in the action as defendants, the interest payment for the period ''Sept 28 to Oct 28 1958.''

The sheriff served Viola Bruno in Lake County on June 26, 1958, and Guy T. Bruno in Alameda County on September 3, 1958. Then, on October 8, 1958, after the Brunos had failed to answer appellant's complaint, the clerk of the court at appellant's request entered their default. At no time did appellant apply to the court for entry of default judgment against the defendant Brunos; the court entered no judgment.

On October 24, 1958, respondents noticed their motion for leave to intervene in the action upon the grounds that they owned the property as a result of its retransfer to them by the Brunos. Appellant did not oppose the motion; on November 3, 1958, the court granted it. Subsequently, respondents filed their ''Answer and Complaint in Intervention'' in which they claimed that the agreement of sale, executed by appellant and

themselves, expressed the parties' true agreement that the total payments on the note, including interest at 6 per cent, were to be $1,000 per annum, but that the note executed pursuant to that contract erroneously provided for separate and additional interest payments. Respondents denied any default in payments and cross-complained for a declaration of the invalidity of the note or for its reformation to conform with the agreement of sale and for damages due to the loss of the profits of their sale to the Brunos.

Appellant did not demur to, or move to strike, respondents' pleading, but answered, denying their right to file a cross-complaint and stating that respondents "stand in the shoes of their predecessors, Guy T. Bruno and Viola Bruno, and must therefore restrict their defenses to those defenses" available to their predecessors.

After a trial on the merits the superior court rendered judgment for respondents. The court found that the parties had intended that the trustors pay $1,000 per annum including interest, that the terms of the note erroneously required interest payments separate and additional to the $1,000, that "as the parties acted upon the original agreement . . . for the five-year period, they cannot rely upon the note as evidence of the transaction," that "as the defendants, the Brunos, have transferred their interest in said real property back to the intervenors . . . the intervenors are real parties in interest and necessary parties to this suit." Appellant brings this appeal on the judgment roll; we must therefore accept as true the trial court's findings as to the parties' agreement.

We turn, first, to the procedural issues; we shall set forth our reasons for holding that appellant cannot successfully attack the intervention at the appellate level in view of her failure to oppose it in the trial court.

Appellant's attack upon the intervention cannot surmount her own failure to object to it at the appropriate time. In writing the opinion of the District Court of Appeal in *Bloom* v. *Waxman* (1941) 48 Cal.App.2d 646 [120 P.2d 509], Justice McComb framed the exact question which now confronts us: "In the absence of an objection to the filing of a complaint in intervention, either by demurrer, motion to strike or other appropriate proceeding, may a party for the first time on appeal raise the objection that the order of the trial court permitting the intervention was improper?" (P. 647; italics omitted.) Answering the question in the negative, the court states: "The law is established in California that in the

absence of an objection in the trial court to an order permitting the filing of a complaint in intervention a party may not urge error in the making of such order for the first time on appeal." (P. 647.) The court concludes: "Since it appears from the record in the instant case that plaintiff, after receiving notice of plaintiff in intervention's (respondent's) motion that he be permitted to intervene in the case, did not by motion or otherwise raise the objection in the trial court which he is now presenting in this court, the above rule is applicable and he is foreclosed from urging alleged error of the trial court in permitting the complaint in intervention to be filed." (P. 647.) The District Court of Appeal reiterated the rule in *El Rio Oils* v. *Pacific Coast Asphalt Co.* (1949) 95 Cal.App.2d 186, 196 [213 P.2d 1], saying: "The law is settled that, in the absence of an objection in the trial court to an order permitting the filing of a complaint in intervention, a party may not urge error in the making of such order for the first time on appeal. (*Bloom* v. *Waxman,* 48 Cal.App.2d 646, 647 [120 P.2d 509].) In the present case the record discloses that defendant did not object to the intervention in the trial court. Therefore defendant may not raise the objection for the first time on this appeal."

Appellant's counsel cannot avoid the waiver by his explanation of his failure to oppose the motion. He asserts that his copy of the notice of motion bore no date; that he consequently looked to the accompanying affidavit dated October 6, 1958, and hence believed that the motion had been filed before the entry of default on October 8, 1958. Because, as a result, he thought the motion timely, he did not object to the intervention. Subsequently he answered respondents' pleading. Counsel alleges, however, that after examining the court's file and discovering that the entry of default preceded the motion, he unsuccessfully moved the court, before the trial commenced on June 17, 1959, to strike respondents' pleading. Yet the instant appeal on the judgment roll does not reflect any motion to strike urged by appellant at the trial. We are, of course, confined to the record. (*Herrlich* v. *McDonald* (1889) 80 Cal. 472, 474 [22 P. 299]; *Producer's Hay Co.* v. *Harney* (1921) 54 Cal.App. 300, 301 [201 P. 801]; 3 Cal.Jur.2d § 285, p. 835.) Moreover, the clerk's transcript indicates that the notice of motion for leave to intervene, as filed, clearly bore the date of execution, October 24, 1958. We cannot assume that appellant's counsel did not receive an exact copy.

We believe appellant's failure to interject a timely objection

to the motion to intervene in the trial court disposes of appellant's attack upon the intervention here. ■ The reason for the rule obviously lies in the fact that appellant has had the benefit of a full trial of the issues. To accord her a second trial, in spite of her failure to object to the intervention at the trial level, would result in that failure blossoming into the strange fruit of a second chance to make her case.

■ Turning to the substantive issue, we do not believe that respondents' transfer of their interest in the property, followed by the Brunos' transfer of the property back to respondents, stripped respondents of their defense to the foreclosure of the deed of trust, that is, their right to disclose the true nature of the transaction.

Appellant cannot successfully contend that "the Brunos did not have any right to raise the defense of mistake since they were not original parties to the execution of the note, and now that the Collinses [respondents] have re-purchased the property, they stand in the shoes of the Brunos and may not raise the defense of mistake." The Brunos, however, as grantees of respondents, "stood in the shoes" of respondents and could raise the defense of mistake. As the early case of *Goodenow* v. *Ewer* (1860) 16 Cal. 461, 468 [76 Am.Dec. 540], states, "If he [the mortgagor] has parted with the estate, his grantee stands in his shoes, and possesses the same right to contest the lien and to object to the sale." (33 Cal.Jur.2d § 251, pp. 634-635; 59 C.J.S. § 417, pp. 608, 612.) The right to reformation of an instrument is not restricted to the original parties to the transaction; for example, a purchaser from the original grantee of real property may seek reformation of the original deed because of a mistake resulting in a misdescription of the property. (*Hart* v. *Walton* (1908) 9 Cal. App. 502, 507 [99 P. 719]; see also: *Parker* v. *Hardisty* (1921) 54 Cal.App. 628, 631 [202 P. 479].) Section 3399 of the Civil Code provides that a contract may be reformed for various reasons "on the application of *a party aggrieved....*" (Emphasis added.) An aggrieved party need not be an original party to the transaction; it clearly includes one who has suffered prejudice or pecuniary loss. (*Hart* v. *Walton, supra,* 9 Cal.App. 502, 507.)

Respondents acquired the interest of the Brunos, including, of course, the "right to contest the lien and to object to the sale." Indeed, respondents as the primary parties to the transaction did no more than reassume those rights and duties which they had in fact and in truth originally undertaken. Just as the transfer of the property to the Brunos did not

strip the Brunos of the right to disclose the true transaction, so the retransfer of the property by the Brunos to the respondents did not strip respondents of their right to disclose the true transaction. The transfers did not diminish or destroy the transferees' right to defend against, and contest, the lien, particularly as respondents were the parties to the original transaction.

The terms of the original bargain did not change by reason of the transfers. Appellant did not acquire a new and different bargain because of the successive delegations of the rights and duties under it. To contend that appellant gained a more advantageous contract against the respondents, the very parties to the agreement, because respondents transferred and reacquired their rights and duties pursuant to it would be to ignore the principle of the decisions and to violate the basic equities.

While appellant also contends that there is not sufficient evidence to sustain the judgment, her claim fails to surmount three hurdles. First, appellant may not attack the sufficiency of the evidence in the absence of a reporter's transcript. Second, the exhibits before this court show that appellant and her husband accepted payments, without objection, in accordance with the terms of the mortgage and not with the terms of the note. Their conduct may be used to aid in the interpretation of the contract between the parties. Finally, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." (Civ. Code, § 1642.)

In essence appellant asks us here to accord to her some rather unique advantages which are supposed to fall into her lap by legal legerdemain. Although she did not object to respondents' motion to intervene, and although a full trial, in which she participated, has been concluded, she now claims upon appeal that the intervention should not have been permitted and she should now acquire a second chance to prevail at a second trial. Her inaction at the trial level is to endow her through the appellate process with the bonus of a second chance. In like manner the actual transaction into which she entered is to expand to her advantage because the other parties transferred their rights and duties pursuant to it and later reacquired them. We know of no theory or reason why appellant should acquire these strange profits.

We affirm the judgment.

Bray, P. J., and Sullivan, J., concurred.