[Civ. No. 21602. First Dist., Div. One. Sept. 24, 1965.]

WINIFRED ORCUTT et al., Plaintiffs and Respondents, v. ANDREW J. FERRANINI et al., Defendants and Appellants.

Rankin, Oneal, Luckhardt, Center, Longinotti & Ingram and William A. Ingram for Defendants and Appellants.

Crist, Peters, Donegan & Brenner and John M. Brenner for Plaintiffs and Respondents.

SIMS, J.—Appellants John Hancock Mutual Life Insurance Company, a corporation, and Andrew J. Ferranini, its agent, have appealed from a judgment which decreed reformation of a transaction involving three policies of life insurance issued to and on the life of the husband of respondent Winifred Orcutt, and awarding her the death benefits payable under the provisions of said policies as applied under the terms of the reformed transaction.[1]

Appellants' principal contention is that respondent Winifred Orcutt, as principal beneficiary, and her coplaintiffs, the three children of her marriage who were named as contingent beneficiaries in each of the three policies of life insurance, lack capacity to sue for reformation of the transaction. They also claim that the action is barred because the right, if any, to reformation was not asserted with reasonable diligence. Timely objections were made and have been pursued as to certain aspects of the findings of fact which bear on the foregoing issues.

The findings of fact, both unimpeached and attacked as noted, disclose the following particulars:

Respondent Winifred Orcutt and Harold E. Orcutt on September 7, 1944 were, and for some time prior thereto had been, legally married and continued in that status until the latter's death March 1, 1959. The remaining named plaintiffs

---

[1]The amounts payable were stipulated to and since all persons concerned are parties to this action, the settlement agreement which is contained in each of the policies may be disregarded.

and respondents were and are the lawful issue of that marriage.

On September 7, 1944, appellant company issued three policies of life insurance insuring the life of Harold E. Orcutt, in each of which respondent Winifred Orcutt was named as beneficiary and the remaining respondents were named as contingent beneficiaries. These policies were referred to in the record as numbers 49, 50 and 51, respectively, and are similarly designated herein. Policy 49 was in the face amount of $6,000, with an annual premium of $306.48; policy 50 was in the face amount of $3,500, with an annual premium of $178.78; and policy 51 was in the face amount of $2,300, with a single premium which was paid in full prior to the issuance of the policy.

Between August 8 and September 17, 1957, it was agreed that all but $500 of paid up insurance under policy number 51 would be surrendered, and that appellants would pay all of the cash surrender value of that policy except that necessary to leave $500 of paid up insurance in effect; and it was further agreed that appellants would loan the maximum amounts available as loans on policies number 49 and 50, leaving those policies in full force and effect, but subject to said loans. The findings recite that these agreements were made between "defendants" (company and agent) on the one hand, and "Harold E. Orcutt and plaintiff Winifred Orcutt" on the other. Appellants point out that the evidence discloses that Mrs. Orcutt was not a party to the contracts of insurance except as revocable beneficiary, that she did not sign the documents executed in connection with the attempted consummation of the agreement, and that under the terms of the policy she did not have the right to direct the insurer to pay out the loan or surrender value of any of the policies. It is asserted, therefore, that there is no evidence to sustain the finding that respondent wife was a party to the transaction. If, however, her right to seek reformation depends not on her status as a party to the loan-surrender transaction itself, but on her status as a beneficiary with rights vested by reason of the death of the insured, the finding is immaterial and the question of its veracity need not be further pursued.[2]

---

[2]Respondents direct attention to evidence which shows that the policies were acquired with community funds, and urge that respondent wife thereby acquired a present, equal and vested interest in them. (See *Estate of Mendenhall* (1960) 182 Cal.App.2d 441, 445 [6 Cal.Rptr. 45].) They concede, however, that during his lifetime the husband had the management and control of the community personal property (*idem*).

Pursuant to the foregoing agreement, appellants prepared certain documents and presented them to Orcutt for his signature. They represented to Orcutt and Mrs. Orcutt that the documents did in truth and fact provide for a partial cash surrender of one policy and for loans against the others as outlined above, and as they then knew, Orcutt and his wife had so ordered. Orcutt and his wife relied upon said representations, and neither read the documents so prepared and presented. He signed them and delivered them with the policies to appellants. Subsequently he received, accepted and cashed checks from appellants in the respective sums of $1,802.27 and $6,193.23 "believing that said checks represented the partial surrender value of policy number 51 and the maximum available loans under policies 49 and 50, respectively, in accordance with the agreement with defendants." Appellants attack the quoted portion as being unsupported by the evidence. The prior findings, insofar as they set forth the intention and agreement of Orcutt, are supported by ample evidence and are not attacked by appellants.[3] They support the inference that this intention, concededly extant when the original documents were executed, continued.

The documents which had been presented to and signed by Orcutt in fact provided for the complete surrender of policies number 49 and 50, in exchange for the full cash surrender value of those policies, and for a loan of $1,802.27 under policy number 51, leaving that policy in full force and effect for its face value of $2,300 subject to the loan. The court found that Orcutt and his wife would not have ordered, did not order, and did not agree to such a transaction; and that they would not have signed and delivered the documents and policies, or accepted and cashed the checks, had they known that such was the nature of the transaction. Appellants herein again object to mention of Mrs. Orcutt as a party to the transaction. These objections are subject to the same comments as made above.

In September 1958, the Orcutts received a notice of an interest payment due on a loan against policy number 51. Upon

---

[3]The testimony of respondent reflects that the agreement upon which she relies was reduced to writing and read and signed by the insured. She is corroborated in part by the testimony of the ex-agent of the company, who originally sold the policies, in regard to the insured's inquiries concerning the values under the policies mainly the loan values, and by similar inquiries reflected in correspondence between the insured and the company. The weight to be given this evidence as contrasted with the documents and other evidence produced by appellants cannot be reviewed herein.

the receipt of this notice they believed for the first time that there may have been an error or mistake in the transaction, and Mrs. Orcutt contacted appellants. Before she could obtain an explanation or clarification, her husband became severely ill and required all her attention until his death March 1, 1959. It was not until that event that respondent, Mrs. Orcutt, learned the documents prepared by defendants and signed and delivered by her husband did not carry out the intended agreement of the parties. Appellants object to so much of the foregoing recitals as imply that Mr. Orcutt in September 1958 suspected error in the transaction of the prior year. Here again the inference is supported by the findings of the earlier intent which are admittedly supported by the evidence.

Attention is now directed to the question of respondents' capacity to sue, and the alleged delay in bringing the action.

### The Respondents Have Capacity to Sue.

The insured reserved the right to change the beneficiaries in respect of each of the policies involved. The interest of a beneficiary under such circumstances has been likened to that of a legatee under a will, a mere expectancy of a gift at the time of the insured's death. (*Thorp* v. *Randazzo* (1953) 41 Cal.2d 770, 773 [264 P.2d 38]; *Grimm* v. *Grimm* (1945) 26 Cal.2d 173, 175-176 [157 P.2d 841]; *Cook* v. *Cook* (1941) 17 Cal.2d 639, 644 [111 P.2d 322]; *Hoeft* v. *Supreme Lodge K. of H.* (1896) 113 Cal. 91-96 [45 P. 185, 33 L.R.A. 174]; *Prudential Ins. Co.* v. *Broadhurst* (1958) 157 Cal.App.2d 375, 378 [321 P.2d 75]; *Lo Presti* v. *Manning* (1932) 125 Cal. App. 442, 446 [13 P.2d 1002]; *New York Life Ins. Co.* v. *Dunn* (1920) 46 Cal.App. 203, 205 [188 P. 1028].) In denying the right of former beneficiaries to contest the right of a properly substituted beneficiary to the proceeds of the policy, which became payable on the death of the insured on the grounds that the latter procured the change by fraud, it has been said: "One cannot be defrauded of that in which he has no vested right. A vested right is property which the law protects, while a mere expectancy is not property, and therefore is not protected." (*Hoeft* v. *Supreme Lodge K. of H., supra,* 113 Cal. at p. 96, followed in *Lo Presti* v. *Manning, supra,* and *New York Life Ins. Co.* v. *Dunn, supra,* which reject attempts to assert similar claims of fraud and undue influence; and cf. comment on *Hoeft* and *Dunn,* Langmaid, *Contracts For Benefit of Third Persons* (1939) 27 Cal.L.Rev.

497, 521-522, fn. 91, and cases collected in annotation (1936) 105 A.L.R. 950.)

On the other hand it is recognized that the expectancy may be assigned or released, and that such assignment or release becomes enforceable when the expectancy has developed into a right. (*Thorp* v. *Randazzo, supra,* finding renunciation; cf. *Grimm* v. *Grimm, supra*; and *Prudential Ins. Co.* v. *Broadhurst, supra,* finding no such renunciation.) ▮ The death of the insured transmutes the expectancy into a right. In *Cook* v. *Cook, supra,* it was urged that the insured's will had effected a change of beneficiary. The opinion states: "A will does not become operative until death; prior to death it is revocable at the whim of the testator, and the objects of the testator's bounty have no vested rights. In that respect it is very similar to the rights of a beneficiary under a life insurance policy in which the insured reserves the right to change the beneficiary such as we have in the instant case. However, upon death the beneficiary's right becomes vested, and that being the case, no expression in the insured's will purporting to assign his life insurance policy or change the beneficiary can be effective. At death he no longer has a policy to assign. It has passed to his heirs, if no beneficiary was designated; if a beneficiary is named it passes to such beneficiary. He cannot then change the beneficiary because the right of the named beneficiary has vested." (17 Cal.2d at p. 646; see also *Estate of Welfer* (1952) 110 Cal.App.2d 262, 265 [242 P.2d 655]; *Turner* v. *Metropolitan Life Ins. Co.* (1943) 56 Cal. App.2d 862, 865 [133 P.2d 859]; *Estate of Miller* (1937) 23 Cal.App.2d 16, 18 [71 P.2d 1117].)

In contrast to the decisions which have denied the former beneficiary the right to assert the fraud or undue influence of the substituted beneficiary, in *Waters* v. *Conselho Supremo etc. De California* (1918) 38 Cal.App. 360 [176 P. 368], the court upheld a judgment for the former beneficiary in an action in which she sought cancellation of a certificate naming a new beneficiary on the ground, which of several asserted was approved by the appellate court, that the insured was mentally incompetent at the time he purported to effect the change.

In *Abroms* v. *New York Life Ins. Co.* (1942) 53 Cal.App. 2d 764 [128 P.2d 391] (hearing by Supreme Court denied) the court reversed judgments of dismissal entered after a general and special demurrer had been sustained and leave to amend had been denied in an action in which plaintiff, as

named beneficiary and, by attempted amendment, as administrator of the estate of his deceased wife, and surviving spouse entitled to the community property, sought reformation of a certificate allegedly erroneously issued under an annuity contract. The contract was purchased by plaintiff and his wife in 1932 and provided for payment of a death benefit to plaintiff as beneficiary if the wife should die before annuity payments became due in 1939, or, if a refund annuity was elected, payments to him, according to a schedule if the wife died thereafter while receiving payments. It gave an election to secure a certificate for a life annuity, with no payments other than to the wife during her remaining life, or for a refund annuity with payments to the beneficiary after her death as noted. It was alleged that the company falsely and fraudulently issued a certificate for a life annuity when in truth and fact the parties had intended a refund annuity; and that this error was not discovered until after the death of the annuitant some 23 months after payments to her commenced. The court posed the question: "Has appellant such an interest in the annuity certificate as to entitle him to maintain the present action?" It answered as follows: "The gist of the instant action is the fraud of respondent corporation in issuing the wrong type of certificate which erroneously failed to name appellant, thus eliminating therefrom a statement of the benefits conferred upon him under the original policy in which he was the named beneficiary. Attention is here called to the statement in the original policy: 'The Company, upon surrender of this Policy on the anniversary elected for commencement of Annuity payments hereunder, *will issue a Certificate in lieu thereof setting forth the rights and benefits as stated herein.*' (Italics added.) Had respondent conformed to said provision and the alleged request of appellant and his wife, and had issued the refund annuity certificate, as requested, appellant would then have had a vested interest in the proceeds of the policy and unquestionably would have been the real party in interest in an action to recover the same." (53 Cal.App.2d at p. 769.) The opinion referred to section 3399 of the Civil Code[4] and concluded: "From what

---

[4]Civil Code section 3399 provides: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised, on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

has been said, it is obvious that appellant is a 'party aggrieved' under section 3399, *supra,* especially where the demanded reformation is for the purpose of showing his beneficial interest in the Annuity Certificate according to the terms of the original policy.'' (Pp. 770-771.)

The court further held that the allegations of the complaint, which appear to be the model for some of the findings which have been hereinabove summarized in this opinion, sufficiently stated a cause of action for reformation.[5]

Appellants seek to distinguish *Abroms* on the ground that, as stated therein, the interest of the beneficiary was deemed to have been vested if the insurer had issued the certificate which was sought by the reformation; whereas, here if the insurer had complied with the insured's directions respondents would still have had only an expectancy. The impact of *Abroms* on this case is further diluted by that court's reference to the proposed amendments in which the plaintiff asserted his representative capacity as administrator of the estate of the deceased annuitant, and his interest as survivor of the community.

Respondents point out that the mention of vested interest refers to the time that suit was filed, after the death of the annuitant with whom the insurer contracted, and that up to the time of her death the plaintiff had but a contingent interest. The decision does not reveal whether or not the right to change the beneficiary was reserved to the annuitant, but it is noted that the original demurrer reportedly advanced the ground that prior to the death of the annuitant the plaintiff had a mere expectancy and that he lacked sufficient title or interest to maintain an action to reform the contract. (P. 768.)

*Abroms* may properly be construed as indicating that a beneficiary, regardless of his status prior to the death of the insured, upon the occurrence of that event, is vested with such rights against the insurer as may be necessary to show the true tenor of the agreement under which he claims. So here respondents are parties aggrieved within the meaning of the provisions of section 3399 of the Civil Code which give a right to reformation.

This conclusion is consistent with those authorities which have given the beneficiary the right to select nonforfeiture options after the death of the insured where not otherwise

---

[5]The proof was more convincing to the trial court in this case, however, than to the trial court in *Abroms.* (See *Abroms* v. *New York Life Ins. Co.* (1944) 64 Cal.App.2d 449 [149 P.2d 217].)

precluded by law or the express terms of the policy. (*Nielsen* v. *Provident Sav. etc. Soc.* (1903) 139 Cal. 332, 338 [73 P. 168, 96 Am.St.Rep. 146]; *Metcalf* v. *Metropolitan Life Ins. Co.* (1934) 1 Cal.App.2d 481, 485-487 [37 P.2d 115].) In the field of liability insurance it has been recognized that a third person, whom the named insured and the insurer mistakenly omitted from the coverage, may secure reformation (*Beach* v. *United States Fid. & Guar. Co.* (1962) 205 Cal.App.2d 409, 417 [23 Cal.Rptr. 73]; *American Surety Co.* v. *Heise* (1955) 136 Cal.App.2d 689, 695-696 [289 P.2d 103]; *Cantlay* v. *Olds & Stoller Inter-Exchange* (1932) 119 Cal.App. 605, 614-617 [7 P.2d 395]); and the party suffering damage who has recovered a judgment may properly seek, or join in seeking, such reformation. (*Gillanders* v. *DaSilva* (1931) 212 Cal. 626, 630-631 [299 P. 722]; *Beach* v. *United States Fid. & Guar. Co., supra*; and see *Valdez* v. *Taylor Automobile Co.* (1954) 129 Cal.App.2d 810, 812 [278 P.2d 91]; *Mercer Casualty Co.* v. *Lewis* (1940) 41 Cal.App.2d 918, 922-924 [108 P.2d 65]; Langmaid, *op. cit.*, 27 Cal.L.Rev. at pp. 525-527, 529-530; cases collected in annotation (1938) 112 A.L.R. 909, 913.) Similar considerations have led to approval of reformation of policies of workmen's compensation insurance by the Industrial Accident Commission. (*National Auto. & Cas. Ins. Co.* v. *Industrial Acc. Com.* (1949) 34 Cal.2d 20, 24-25 [206 P.2d 841]; *Eagle Indem. Co.* v. *Industrial Acc. Com.* (1949) 92 Cal.App.2d 222, 224-225 [206 P.2d 877].)

In reference to the right of a purchaser from one who was entitled to reformation of a deed, this court, Tobriner, J., has said: "The right to reformation of an instrument is not restricted to the original parties to the transaction; for example, a purchaser from the original grantee of real property may seek reformation of the original deed because of a mistake resulting in a misdescription of the property. (*Hart* v. *Walton* (1908) 9 Cal.App. 502, 507 [99 P. 719]; see also: *Parker* v. *Hardisty* (1921) 54 Cal.App. 628, 631 [202 P. 479].)

Section 3399 of the Civil Code provides that a contract may be reformed for various reasons 'on the application of *a party aggrieved. . . .*' (Italics added.) An aggrieved party need not be an original party to the transaction; it clearly includes one who has suffered prejudice or pecuniary loss. (*Hart* v. *Walton, supra,* 9 Cal.App. 502, 507.)" (*Watson* v. *Collins* (1962) 204 Cal.App.2d 27, 32 [21 Cal.Rptr. 832].)

Appellants rely upon *Smith* v. *Minnesota Mut. Life Ins. Co.* (1948) 86 Cal.App.2d 581 [195 P.2d 457], for the proposi-

tion that the right of action, if any, is not respondents but in the representative of the insured's estate. That case involves a right of action for the negligent failure to act on an application for insurance. That such an action would lie when brought by the applicant himself in the case of accident insurance had already been determined. (*Stark* v. *Pioneer Casualty Co.* (1934) 139 Cal.App. 577, 580-581 [34 P.2d 731].) The questions of whether the cause of action on the theory of negligence in acting on the application survived the death of the applicant for life insurance, and if so, who would be the proper party plaintiff were raised but not decided in *Lucas* v. *Metropolitan Life Ins. Co.* (1936) 14 Cal.App.2d 676, 680 [58 P.2d 934] wherein the widow, presumably the nominated beneficiary, unsuccessfully asserted in the alternative that a contract existed or that the insurer was negligent in acting on the application. Similarly in *Linnastruth* v. *Mutual Benefit etc. Assn.* (1943) 22 Cal.2d 216, 220 [137 P.2d 833], the court found no facts presented which would justify a finding of negligence, waiver or estoppel on the part of the insurer, and the question of the capacity of the plaintiff, as nominated beneficiary, to sue was not raised. In *Smith* the court concluded, as follows, in respect of the right of the nominated beneficiary to sue: "Plaintiffs seem to concede in their brief that with two or three exceptions [citations], it has been universally held that a cause of action, under circumstances such as here related, may lie in favor of the representative of the estate, but not in favor of the named beneficiary merely by reason of being the beneficiary named in the application. [Citations.] These cases, in effect, hold that negligence is a positive wrong, a breach of duty, and no person may recover damages because of the wrong save the one to whom the duty was owing. It therefore must be held that the mere fact that the plaintiff wife is named as a beneficiary in the application, in itself, would not give her a right of action against the defendants." (86 Cal.App.2d at pp. 585-586.) A second cause of action brought in the name of the administratrix of the deceased applicant was approved, the court stating: "Therefore it appears from the pleadings that a 'cause of action' did exist immediately prior to the applicant's death and that although sounding in tort the cause of action was connected with and primarily based upon contract, either express or implied and that the applicant sustained an injury to his property and estate, either in being or expectancy, as distinguished from an injury to his person, and therefore a cause of action sur-

vived to the administrator of his estate. As to the second cause of action, therefore, the demurrer should have been overruled and the defendants given proper time to plead thereto.'' (*Id.*, pp. 591-592.) Leave was given to amend the first cause of action to permit the widow, who had claimed as nominated beneficiary, to amend to show an alleged community property interest.

It is obvious that the last mentioned case is not predicated upon any contract or reformation thereof. The court struggled with the question of survivorship of a tort action, came up with quasi-contractual relationship, and so could permit an action by the representative. (See Livingston, *Survival of Tort Actions* (1949) 37 Cal.L.Rev. 63, 70, fn. 40; Comment (1949) 37 Cal.L.Rev. 657-660; and annotation (1953) 32 A.L.R.2d 487, 537.)

*Smith* fails to disclose how damages—to be measured by the indemnity applied for according to *Stark* (139 Cal.App. at p. 580)—can be recovered by the decedent's representative, when the contract if consummated would have enriched not the insured's estate, but the designated object of his bounty. (See *Cook* v. *Cook, supra,* 17 Cal.2d 639, and cases cited above following the quotation from that case.)

 Regardless of the difficulties in transmitting an action sounding in tort from the person wronged to his intended beneficiary, there is no proscription which renders the action for reformation nonassignable. The assignment of such a cause of action has often been recognized. (*California Pac. Title Co.* v. *Moore* (1964) 229 Cal.App.2d 114, 117 [40 Cal. Rptr. 61]; *Beach* v. *United States Fid. & Guar. Co., supra,* 205 Cal.App.2d 409, 410; *Watson* v. *Collins, supra,* 204 Cal. App.2d 27, 34.) There is, therefore, a clear distinction between *Smith* and *Abroms,* and the principles of the cases granting reformation suggest and support the conclusion that the respondents as beneficiaries were the proper parties to enforce the cause of action for reformation after the death of the insured.

### Reformation Is not Barred by Laches.

Appellants allege that respondents lost their right to reformation through neglect or failure to assert it with reasonable diligence. Neither the statute of limitations nor laches was asserted by appellants in their answer or at the pretrial conference. The trial court was not called upon to pass upon any such defense and the propriety of considering it herein is questionable. (*Allen* v. *Meyers* (1936) 5 Cal.2d 311, 316

[54 P.2d 450]; *Tracy* v. *Smith* (1917) 175 Cal. 161, 165-166 [165 P. 535].)

The findings as outlined above reflect first suspicions of a mistake in September 1958, some attempts to secure an explanation, intervening illness and death, subsequent elucidation of the facts as recorded, and suit filed eight months thereafter. No prejudice was suffered by appellants by any delay after the death of the insured; and the six months' delay prior thereto is explained by reasonable efforts, consistent with other problems faced by Mrs. Orcutt. The record reflects that at Mrs. Orcutt's request in January 1959, before the insured's death, the ex-agent did advise the cashier of appellants' Berkeley office that, ''There is something here that isn't just right . . . because Mr. Orcutt had asked me what the loan value of those policies were. . . .'' It cannot be said that either the findings or the evidence reflect laches or lack of diligence in seeking reformation as a matter of law.

The judgment is affirmed.

Sullivan, P. J., and Molinari, J., concurred.