[Civ. No. 32608. First Dist., Div. Two. Dec. 4, 1974.]

DAVID L. MOSS et al., Cross-complainants and Appellants, v. GORDON B. WARREN, Cross-defendant and Respondent.

652

## COUNSEL

Molly H. Minudri for Cross-complainants and Appellants.

James P. Preovolos for Cross-defendant and Respondent.

## OPINION

**ROUSE, J.**—Equitable Life Assurance Society of the United States commenced an interpleader action by filing a complaint which alleged that the proceeds of a group life insurance policy insuring the life of Mary Warren were the subject of conflicting claims. Specifically, plaintiff insurer alleged that Mary Warren had died in September 1967, and that the sum of $13,800 was payable under the insurance policy. The named beneficiaries under the insurance policy, defendants David L. Moss, David P. Moss, Gail Anne Moss and Lynne Marie Moss, claimed a right to the proceeds of the policy, but defendant Gordon Warren, the brother of Mary Warren, asserted a conflicting claim to the funds in question. Plaintiff prayed that the de-

fendants be required to interplead and settle among themselves their rights to the $13,800.

The case was tried by the court, sitting without a jury, and the following evidence was produced: In February 1964, Mary Warren married David L. Moss. Mr. Moss had three children by a prior marriage, David P. Moss, Gail Anne Moss and Lynne Marie Moss. Following the marriage of Mary Warren and David L. Moss, David's three children resided with them, and a close relationship developed between Mary and her three stepchildren.

On June 14, 1965, Mary Warren was employed by the University of California Medical Center and became a member of the retirement system. She designated David L. Moss as first beneficiary of her retirement fund benefit. His three children were designated as second beneficiaries, and Mary Warren's brother, Gordon Warren, was designated as third beneficiary.

On October 29, 1965, Mary Warren was issued the group insurance policy which is the subject of this action. Mary Warren designated David L. Moss and his three children as beneficiaries under the policy. The policy provided that a change in beneficiary could be effected only by a written request filed with the insured's employer.

In July 1966, Mary Warren filed an action for divorce against David L. Moss.

On September 29, 1966, Mary Warren executed a document revoking her prior designation of beneficiaries of her retirement fund benefit. She designated as her beneficiaries her brother, Gordon Warren, and his wife, Wenona. Florence Bonk, who was then in charge of the payroll at the nursing office of the University of California Medical Center, witnessed the execution by Mary Warren of the change of beneficiary. Miss Bonk testified that Mary Warren had specifically asked for a change of beneficiary for her retirement fund benefit. Miss Bonk did not recall Mary Warren making any mention of her life insurance policy. Miss Bonk had available in her office forms for executing a change of beneficiary under a life insurance policy, which she would have produced had Mary Warren indicated that she wished to make such a change.

In March 1967, Mary Warren obtained an interlocutory decree of divorce from David L. Moss, and in August 1967, a final decree of divorce was entered.

On September 21, 1967, Mary Warren executed a holographic will which contained the following provision: "Insurance, retirement monies and the money owed me by David L. Moss on the promissory note is to go

to my brother and his family Gordon B. Warren Western State Aviation, Gunnison Colorado."

On September 27, 1967, six days after executing the will, Mary Warren died.

Four witnesses testified to statements by Mary Warren to the effect that she wished to make her brother her sole beneficiary and believed that she had in fact done so:

Wenona Warren, Mary Warren's sister-in-law and the wife of Gordon Warren, testified that in December 1966, Mary Warren stated that she had gone to the office at the University of California Medical Center and "changed everything over to her brother."

Gordon Warren likewise testified that in December 1966, Mary Warren had told him that she had changed her retirement benefit and insurance to him as beneficiary.

James Preovolos, the attorney who represented Mary Warren in the divorce action, testified that Mary Warren had asked him if it was all right for her to change beneficiaries. Mr. Preovolos told her that it was not only all right but that she ought to do it. Several days after this conversation, Mary Warren told Mr. Preovolos that she had changed the beneficiaries to her brother and sister-in-law. Mr. Preovolos did not specify in his testimony whether Mary Warren was referring to the beneficiary of her retirement fund benefit or of her life insurance policy.

Irma Nickerson, the director of nursing at the University of California Medical Center, testified that Mary Warren had come to her and stated that she had just gotten her divorce and wanted to " 'change all my beneficiaries,' . . . because she wanted to change them all to her brother's name." Miss Nickerson told Mary Warren to go to accounting. Two or three days later, Mary Warren told Miss Nickerson that everything was settled and that she had "changed everything to her brother's name."

At the conclusion of the trial, the court rendered judgment in favor of Gordon B. Warren, awarding him the proceeds of the group insurance policy on the life of Mary Warren. Notice of appeal was timely filed by David L. Moss and his three children.

■ Appellants take the position on appeal that the evidence, even when viewed in the light most favorable to respondent Gordon Warren, does not support the trial court's determination that Mary Warren effectively changed the beneficiary under her group insurance policy. They assert that Mary Warren did not comply with the provision in the policy

requiring her to file with her employer a written request for a change of beneficiary and she likewise did not engage in conduct bringing her within any of the exceptions to the rule requiring that a change of beneficiary be made substantially in the manner specified in the contract of insurance. We conclude that appellants' position is sound.

In *Pimentel* v. *Conselho Supremo, etc.* (1936) 6 Cal.2d 182, 187-188 [57 P.2d 131], the court stated the applicable rule as follows: "There are three often-repeated and well-recognized exceptions to the rule that where the contract of insurance provides a method for making a change of beneficiary the insured must follow substantially the method prescribed: (1) If the society has waived a strict compliance with its own rules, and in pursuance of a request of the insured to change his beneficiary, has issued a new certificate, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued; (2) If it is beyond the power of the insured to comply literally with the regulations a court of equity will treat the change as having been made; and (3) If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary, but before the new certificate is actually issued he dies, a court of equity will treat such certificate as having been made. [Citations.]"

With regard to the third exception, the *Pimentel* court went on to state that "where the insurer is not contesting the change the rule is not to be applied rigorously and where the insured makes every reasonable effort under the circumstances, complying as far as he is able with the rules, and there is a clear manifestation of intent to make the change, which the insured has put into execution as best he can, equity should regard the change as effected." (P. 188.)

In this instance, it is apparent that the first and second exceptions specified in the *Pimentel* case do not apply. There was no evidence even suggesting that the insurer waived a strict compliance with its own rules. Similarly, there is no evidence that it was beyond the power of Mary Warren to comply literally with the insurer's rules. To the contrary, the uncontradicted evidence established that when Mary Warren visited the accounting office at her place of employment and executed a change of beneficiary of her retirement fund benefit, there was nothing to prevent her from simultaneously executing a change of beneficiary under her life insurance policy. The appropriate forms were available, but Mary Warren simply failed to ask for them or to express any desire to effect a change of beneficiary under her life insurance policy.

The third exception described in the *Pimentel* case must also be deemed

inapplicable, since it applies only in a situation where the insured has made some attempt to pursue the course pointed out by the rules of the insurer and has complied with said rules as far as he is able, while clearly manifesting his intent to effect a change of beneficiary.

Here again, the record is devoid of any evidence that Mary Warren ever made any attempt to comply with the insurer's rules governing a change in beneficiary under her life insurance policy. Although it is true that the making of the holographic will, coupled with the various verbal statements made by Mary Warren, could properly be viewed as a clear manifestation of her intent to make a change of beneficiary, such intent, standing alone, did not relieve Mary Warren from the duty to substantially comply with the insurer's rules.

In *Cook* v. *Cook* (1941) 17 Cal.2d 639 [111 P.2d 322], as in the case at bar, the court had before it the question of whether an insured, who had made no attempt to comply with the insurer's rules governing a change of beneficiary under a life insurance policy, could effect such a change by so providing in his will. The court held that he could not, stating, "A will does not become operative until death; prior to death it is revocable at the whim of the testator, and the objects of the testator's bounty have no vested rights. In that respect it is very similar to the rights of a beneficiary under a life insurance policy in which the insured reserves the right to change the beneficiary such as we have in the instant case. However, upon death the beneficiary's right becomes vested, and that being the case, no expression in the insured's will purporting to assign his life insurance policy or change the beneficiary can be effective. At death he no longer has a policy to assign. It has passed to his heirs, if no beneficiary was designated; if a beneficiary is named it passes to such beneficiary. He cannot then change the beneficiary because the right of the named beneficiary has vested." (P. 646.) (To the same effect, see *Orcutt* v. *Ferranini* (1965) 237 Cal.App.2d 216, 221 [46 Cal.Rptr. 715].)

We find that, in light of the foregoing, appellants are correct in contending that Mary Warren never effectively changed the beneficiary under her group life insurance policy from appellants Moss to respondent Warren.

The judgment is reversed, with directions to the trial court to award the proceeds of the policy in question to appellants Moss in their capacity as the beneficiaries designated under said policy on the date of Mary Warren's death.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied January 3, 1975, and respondent's petition for a hearing by the Supreme Court was denied January 29, 1975.